# CASE NO. 24-2048

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CAROLYN HALL
V.
SHEPPARD PRATT HEALTH SYSTEM, INC.

ON APPEAL FROM
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

## OPENING BRIEF OF APPELLANT

SUBMITTED BY:
Theresa Kraft
Wilt Toikka Kraft, LLP
1629 K Street NW Ste 300
Washington, DC 20006
202-508-3648
tkraft@wtk-law.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.     Does party/amicus have any parent corporations?                 YES     NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                 YES     NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                              YES    NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)        YES    NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                              YES    NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?              YES    NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____

Counsel for: _____

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................... ii

**TABLE OF AUTHORITIES** ................................................................iv

**STATEMENT OF JURISDICTION** ..........................................................1

**STATEMENT OF THE ISSUES** ..............................................................1

**STATEMENT OF THE CASE** ................................................................2

**SUMMARY OF ARGUMENT** .................................................................7

**ARGUMENT** ......................................................................................12

    I.  STANDARD OF REVIEW ......................................................12

    II.    MS. HALL MADE A PRIMA FACIE CASE FOR FAILURE TO

ACCOMMODATE HER SINCERELY HELD RELIGIOUS BELIEFS ...............................13

      *a.    Ms. Hall's Sincerely Held Religious Beliefs Conflict with a Work*

*Requirement*....................................................................................13

      *b.    Ms. Hall Informed SPHS of the Conflict When She Requested a*

*Religious Exemption to SPHS's COVID-19 Vaccination Policy* ....................16

      *c.  SPHS Disciplined Ms. Hall by Terminating Her Employment*

*Because of Her Sincerely Held Religious Beliefs and Her Failure to Receive*

*the COVID-19 Vaccination*.................................................................17

III.    SPHS Did Not Prove That Providing Ms. Hall a Religious Exemption to the COVID-19 Vaccination Was an Undue Burden on the Business………………………………………………………………………..18

      *a.    The Undue Hardship Standard*........................................................*18*

      *b.    SPHS Did Not Prove That Allowing Ms. Hall to Mask and Test in lieu of Receiving the COVID-19 Vaccination Would Increase the Risk of Spreading the Virus That Created an Undue Burden*......................................*20*

**CONCLUSION**............................................................................**23**

**REQUEST FOR ORAL ARGUMENT** ......................................**24**

**CERTIFICATE OF COMPLIANCE** ......................................**25**

**CERTIFICATE OF SERVICE** ................................................**26**

## TABLE OF AUTHORITIES

Cases

Abdelkader v. Sears, Roebuck & Co., 780 F. Supp. 2d 389, 395 (D. Md. 2011)....17

Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011) .................................................................................................................12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)..................................12

Andrews v. Virginia Union University, Civil Action No. 3:07cv447, at *14-15 (E.D. Va. May 15, 2008). ..............................................................................14, 15

Beadle v. Hillsborough Cty. Sheriff's Dep't, 29 F.3d 589, 592 (11th Cir. 1994); 8, 10

Bellamy v. Mason's Stores, Inc., 508 F.2d 505 (4th Cir. 1974).............................14

Brennan v. Deluxe Corp., Civil Action No. ELH-18-2119, at *21-22 (D. Md. May 26, 2021 ...........................................................................................................7

Brennan v. Deluxe Corp., Civil Action No. ELH-18-2119, at *24 (D. Md. May 26, 2021)........................................................................................................9, 11

Brown v. Pena, 441 F. Supp. 1382, 1385 (D.C. Fla. 1977) ...................................14

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998)...........................................................................................17

Chaplin v. Du Pont Advance Fiber Systems, 293 F. Supp. 2d 622, 629 (E.D. Va. 2003)...............................................................................................................15

Cloutier v. Costco Wholesale, 311 F. Supp.2d 190, 196 ........................................14

Detwiler v. Mid-Columbia Med. Ctr., 2022 U.S. Dist. LEXIS 242626, 2022 WL

    19977290, at *3 (D. Or. Dec. 20, 2022), ..........................................14

Dorsey v. Department of Air Force, 78 M.S.P.R. 439, 445 (1998); ........................13

E.E.O.C. v. Union Independiente, 279 F.3d 49 ........................................................14

EEOC v. Ithaca Indus., Inc., 849 F.2d 116, 120 (4th Cir. 1988) (en banc)

    (Wilkinson, J., concurring)).............................................................8, 11

Firestone, 515 F.3d at 312 ........................................................................................7

Firestone, 515 F.3d at 313 ...................................................................................8, 11

Groff v. DeJoy, 143 S. Ct. 2279, 2295, 216 L. Ed. 2d 1041 (2023)............13, 18, 19

Hardison. 432 U.S. at 76 ...........................................................................................19

Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019) .................12

Mason v. Gen. Brown Cent. Sch. Dist., 851 F.2d 47, 51 (2d Cir. 1988). ...............13

Miller v. Port Auth. of N.Y. & N.J., 351 F. Supp. 3d 762, 789 (D.N.J. 2018); .......11

Noel v. Artson, 641 F.3d 580, 591 (4th Cir. 2011) ..................................................12

Powell v. Susdewitt Mgmt., LLC, Civil Action No. CCB-20-2343, 2021 U.S. Dist.

    LEXIS 184395, at *12-13 (D. Md. Sep. 27, 2021) ..............................17

Stroup v. The Coordinating Ctr.., Civil Action MJM-23-0094, 2023 U.S. Dist.

    LEXIS 173688 at *19 (D. Md. Sep. 28, 2023)....................................21

Tabura v. Kellogg USA, 880 F.3d 544, 558 (10th Cir. 2018)............................8, 10

Thomas v.Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 714 (1981)) 14

Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1243 (9th Cir. 1981) ................. 11

Trans World Airlines v. Hardison, 432 U.S. 63, 74 (1977) ...................................... 6

U.S. Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc., 575

U.S. 768, 773 (2015) ........................................................................................ 7

U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc., 860 F.3d 131,

141 (4th Cir. 2017) ............................................................................................ 7

United States v. Lee, 455 U.S. 252, 257 (1982)) .................................................... 15

United States v. Seeger, 380 U.S. 163, 166, 85 S. Ct. 850, 13 L. Ed. 2d 733

(1965)); ............................................................................................................. 14

United States v. Seeger,380 U.S. 163, 165 (1965)). ............................................... 15

Statutes

28 U.S.C. § 1291 ...................................................................................................... 1

28 U.S.C. § 1331 ...................................................................................................... 1

42 U.S.C. § 2000e(j) .............................................................................................. 19

42 U.S.C. § 2000e-2(a)(1) ....................................................................................... 7

42 U.S.C. § 2000e-5(f)(3) ........................................................................................ 1

Title VII .............................................................................................................. 14, 17

Rules

Fed. R. Civ. P. 56(a).................................................................................12

Rule 56 .....................................................................................................12

Regulations

29 C.F.R. § 1605.1....................................................................................14

**STATEMENT OF JURISDICTION**

The district court had subject matter jurisdiction over this matter under Title

VII of the Civil Rights Act's specific jurisdiction provision in 42 U.S.C. § 2000e-

5(f)(3) and the general federal question jurisdiction provision in 28 U.S.C. § 1331.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because

the order that is the subject of this appeal is a final judgment of the district court,

which disposed of all parties' claims.

The district court order was entered on September 20, 2024. The Notice of

Appeal was filed on October 18, 2024.

**STATEMENT OF THE ISSUES**

Whether Appellee, Shepard Pratt Health System, Inc. (SPHS), violated Title

VII of the Civil Rights Act of 1964, as amended, when it denied Appellant's,

Carolyn Hall (Ms. Hall), request for a religious exemption to a COVID-19

vaccination.

Whether the district court erred in granting Appellee's motion for summary

judgment.

Whether the district court erred in weighing facts that were in dispute when

granting Appellee's motion for summary judgment.

## STATEMENT OF THE CASE

Ms. Hall is a woman of faith. *JA0008.* Ms. Hall's religious belief and practice, which she describes as a conviction, is based on the Christian theory of human rights, derived from the idea of Imago Dei (humans are created in the image of God), embedded in Christianity and other theologies, and enshrined in the inherent and natural, God-given, right to bodily integrity. *JA0009.* Central to Ms. Hall's religious belief and practice are the requirements to treat her body as a temple and to seek knowledge to understand God's will. *Id.* These beliefs encompass Ms. Hall's core values; adherence to these beliefs is paramount to her identity as a Christian woman. *Id.* Ms. Hall believes that the constitutional right to freedom of religion is sacred and should not be abandoned without prayer and that doing so is following God's teachings.

Ms. Hall does not equivocate her responsibilities to God. She has belonged to the same church since 1991 and has attended church in the same location since 1999. *JA0168.* Ms. Hall attends church three times per week for sermons, to participate in prayer meetings, and to support congregation members. *JA0197.* Ms. Hall is convicted in her religious beliefs, and that conviction would mean nothing if she abandoned those beliefs to conform to a job requirement. *JA0200; JA0202.*

Although Ms. Hall holds licensure as a Registered Nurse, her position at Sheppard Pratt from 2017 through 2021 did not require her to perform the duties typically conducted by nurses. *JA0186.* Ms. Hall did not administer medicine. *Id.* Ms. Hall did not take vitals. *Id.* Ms. Hall did not accompany patients to the restroom to ensure they were not vomiting or purging. *Id.* In fact, Ms. Hall did not touch the incoming patient at all. Ms. Hall spoke with potential patients over the phone. Ms. Hall confirmed medical coverage for the proposed treatment over the phone with insurance providers. Ms. Hall communicated potential timelines for admission over the phone and via email. On the day of admission, Ms. Hall would meet the patient and any family members in the lobby of the Weinberg building of the Sheppard Pratt Hospital. *Id.* Ms. Hall would wear a mask and practice social distancing per the CDC guidelines. Ms. Hall would spend five to thirty minutes with the patient and any family members to answer questions and wait for a nurse from the unit to escort the patient to their room. In fact, while sick in 2020, Ms. Hall was asked to use a work computer to complete work tasks at home. During her recovery, her job was successfully done 100% remotely. *JA0010.*

Covid-19 vaccinations were made available for healthcare workers as early as December 2020. *JA0007.* Throughout 2021, vaccinations were made available to adults. *Id.* Between April 2021 and December 2021, the reported cases of COVID-19 in Maryland and Baltimore City were well below the spike of cases

reported pre-vaccination.[1] *Id.* Hospitalizations related to COVID-19 in Maryland were well below the spike of hospitalizations reported pre-vaccination.[2] *Id.* Before adopting an official COVID-19 vaccination program, Sheppard Pratt began accepting medical and religious exemptions. *JA0010.* On August 31, 2021, Ms. Hall submitted a request for an exemption to the vaccination policy. *Id.* The form required by Sheppard Pratt required that a religious leader include a verification of a sincerely held religious belief, which Ms. Hall did. *Id.*

Ms. Hall provided support for her religious beliefs and the importance of abiding by those religious beliefs, referring to supporting scripture, 1 Corinthians 3:16-17. *JA0011.* Ms. Hall stated that her sincerely held religious beliefs included the theory that her "body is a sacred temple belonging to [her] Creator, God. *Id.* [Ms. Hall] bear[s] responsibility to refrain from potential harm such as the Covid vaccine." Ms. Hall added that because "God alone is the giver and taker of life," stating that she objected to the use of fetal cells in the development of the then-available COVID vaccines. *Id.* Ms. Hall provided a letter from Pastor Jason Moore, Director of GGWO Pastoral Care for the Greater Grace World Outreach. Pastor Moore confirmed that Ms. Hall was a member in good standing of the

---

[1] Maryland COVID-19 Data,
https://health.maryland.gov/covid/Pages/Maryland-COVID-19-Data.aspx
last visited February 12, 2025.
[2] Id.

4

Greater Grace World Outreach local church in Baltimore, MD. *Id.* Pastor Moore confirmed that Ms. Hall's beliefs were based on scripture, describing her beliefs as religious convictions. *Id.*

After SPHS informed Ms. Hall that her religious exemption request was being denied, Ms. Hall was told she would be terminated. *Id.* Rather than terminating Ms. Hall immediately, SPHS kept Ms. Hall on staff through the beginning of November.[3] *JA0012.* Once Ms. Hall was terminated, she applied for unemployment benefits, which SPHS challenged by stating that Ms. Hall had failed to follow policies and protocols. *JA0013.*

Ms. Hall filed a Complaint on December 18, 2022, in the United States District Court for the District of Maryland, Civil Action No. 1:22-cv-3261-ABA, alleging SPHS discriminated against Ms. Hall on the basis of her religion and retaliated against Ms. Hall for requesting a religious exemption to SPHS's COVID-19 vaccination requirement. *See generally JA0005 – JA0017.*

---

[3] This decision, as well as the significant delay (approximately 8 months for some requests) in processing Ms. Hall's and others' religious exemption request, belie SPHS's rationale that having unvaccinated, patient facing employees posed too large a risk.

SPHS filed a Motion for Summary Judgment on October 6, 2023.[4] *See*

*generally JA0043.* On October 6, 2023, SPHS filed an Amended Answer with

consent from Ms. Hall, emphasizing that SPHS had relied in good faith on EEOC

written interpretations adopting the more than *de minimis* standard set forth in

*Trans World Airlines v. Hardison*, 432 U.S. 63, 74 (1977) in determining that

granting Plaintiff's religious exemption request would have posed an undue

hardship. *See generally JA0091 – JA0103.* The amended answer was in response to

*Groff v. DeJoy*, 600 U.S. 447 (2023), which rejected the more than *de minimis* cost

standard, holding that an employer must show that the burden of granting an

accommodation would result in substantially increased costs in relation to the

conduct of its particular business. *Id.* at 470.

Ms. Hall opposed the Motion for Summary Judgment. *JA0140.* The district

court ultimately determined that SPHS had met the burden of showing undue

hardship if Ms. Hall's religious exemption was allowed and granted SPHS's

Motion for Summary Judgment. *JA0266.* Ms. Hall filed a Notice of Appeal.

*JA0294.*

---

[4] SPHS filed a CORRECTED Motion for Summary Judgment on October 9,
2023, due to an oversight in citing to an exhibit for the Motion for Summary
Judgment. *See generally JA0104.*

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Brennan v. Deluxe Corp.*, Civil Action No. ELH-18-2119, at *21-22 (D. Md. May 26, 2021) (cleaned up). A failure-to-accommodate claim requires an employee to prove that: "'(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quoting *Firestone*, 515 F.3d at 312) (alterations in *Consol Energy*), *cert. denied*, ___ U.S. ___, 138 S. Ct. 976 (2018). The rule for "claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions." *U.S. Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

A defense to an employer's refusal to accommodate a sincerely held religious belief can be made by showing that accommodating the employee would cause an undue hardship. Title VII does not define the concepts of reasonable

accommodation and undue hardship. Therefore, "the precise reach of

the employer's obligation to its employee is unclear.... and must be determined on

a case-by-case basis." *Beadle v. Hillsborough Cty*. *Sheriff's Dep't*, 29 F.3d 589,

592 (11th Cir. 1994); *see Tabura v. Kellogg USA*, 880 F.3d 544, 558 (10th Cir.

2018) ("Whether an employer will incur an undue hardship is a fact question...that

turns on 'the particular factual context of each case.'") (internal citation omitted).

The Fourth Circuit has explained: "The [statute's] use of the terms 'reasonably' and

'undue hardship'...indicates that this is a field of degrees, not a matter for extremes.

Both terms are 'variable ones,' dependent on the extent of the

employee's religious obligations and the nature of the employer's work

requirements." *Firestone*, 515 F.3d at 313 (citing *EEOC v. Ithaca Indus*., *Inc*., 849

F.2d 116, 120 (4th Cir. 1988) (en banc) (Wilkinson, J., concurring)).

     The EEOC developed guidance specific to requests for religious exemptions

to COVID-19 vaccination requirements that advised employers to rely on

"objective information," not "speculative or hypothetical hardship," including the

assumption that other employees might seek accommodations. EEOC, What You

Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other

EEO Laws at L.3, L.4 (last updated March 14, 2022). A fact-specific inquiry

appropriate for a case-by-case determination is whether a reasonable

accommodation exists that does not pose an undue hardship. EEOC Religion Guidance § 12-IV-B-1.

In sum, the reasonable accommodation and undue hardship standards "ensure that while an employer must 'actively attempt to accommodate an employee's religious expression or conduct,'...it is not required to do so 'at all costs.'" *Brennan v. Deluxe Corp.*, Civil Action No. ELH-18-2119, at *24 (D. Md. May 26, 2021) (cleaned up). And "[a]n analysis of undue hardship may not be based on mere speculation or conjecture." *Id. at *33.*

SPHS argues that the "record evidence unequivocally shows that [SPHS] could not have accommodated Plaintiff's request for a religious exemption to [SPHS]'s COVID-19 vaccination mandate without incurring undue hardship." *JA0117.* Sheppard Pratt further argues that granting Plaintiff's request would have "unacceptably increased the risk of COVID-19 transmission in the Center for Eating Disorders…" *Id.* Sheppard Pratt makes general statements about the impact of COVID-19 on the world, the country, and the hospital. Sheppard Pratt does not state how these general statements relate to Ms. Hall's request and subsequent denial of a religious exemption. The record *does not* unequivocally support the idea that accommodating Ms. Hall would cause undue hardship.

Defendant submitted an affidavit from Todd Peters, M.D.[5] who at the relevant time here held the positions of Vice President, Chief Medical Officer, and Chief Medical Information Officer at Sheppard Pratt. *JA0046.* In that affidavit, Dr. Peters recites information regarding the general impact that COVID-19 had on Sheppard Pratt. *JA0047.* Dr. Peters then recites the types of patients Sheppard Pratt treats, describing those admitted to the Center for Eating Disorders as more vulnerable to severe illness. *JA0049 – JA0052.* Dr. Peters further cites the complications or risks associated with patients with eating disorders who may contract COVID-19. *JA0052 – JA0054.* Dr. Peters has not tried to connect the general information in his affidavit to the material facts necessary for a finding in favor of Defendant's Motion for Summary Judgment.

Title VII does not define the concepts of reasonable accommodation and undue hardship. Therefore, "the precise reach of the employer's obligation to its employee is unclear.... and must be determined on a case-by-case basis." *Beadle v. Hillsborough Cty. Sheriff's Dep't*, 29 F.3d 589, 592 (11th Cir. 1994); *see Tabura v. Kellogg USA*, 880 F.3d 544, 558 (10th Cir. 2018) ("Whether an employer will

---

[5] Dr. Peters was not listed as a person knowledgeable about the facts in Defendant's answer to the Complaint until September 5, 2023. Defendant's Second Amended Answer to Interrogatories was sent to Plaintiff on September 6, 2023, just two days before discovery ended. Dr. Peters has not been deposed and the testimony via affidavit has not been subjected to cross examination.

incur an undue hardship is a fact question...that turns on 'the particular factual context of each case.'") (internal citation omitted). The Fourth Circuit has explained: "The [statute's] use of the terms 'reasonably' and 'undue hardship'...indicates that this is a field of degrees, not a matter for extremes. Both terms are 'variable ones,' dependent on the extent of the employee's religious obligations and the nature of the employer's work requirements." *Firestone*, 515 F.3d at 313 (citing *EEOC v. Ithaca Indus*., *Inc*., 849 F.2d 116, 120 (4th Cir. 1988) (en banc) (Wilkinson, J., concurring)). In sum, the reasonable accommodation and undue hardship standards "ensure that while an employer must 'actively attempt to accommodate an employee's religious expression or conduct,'...it is not required to do so 'at all costs.'" *Brennan v. Deluxe Corp.*, Civil Action No. ELH-18-2119, at *24 (D. Md. May 26, 2021) (cleaned up).

And "[a]n analysis of undue hardship may not be based on mere speculation or conjecture." *Miller v. Port Auth. of N.Y. & N.J.*, 351 F. Supp. 3d 762, 789 (D.N.J. 2018); *see Tooley v. Martin-Marietta Corp*., 648 F.2d 1239, 1243 (9th Cir. 1981) (undue hardship requires "proof of actual imposition on coworkers or disruption of the work routine" rather than "conceivable or hypothetical hardships" (internal quotation marks and citation omitted))

## I.  Standard of Review

This Court applies a *de novo* review to a lower court's ruling on a motion for summary judgment under Rule 56. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry on a motion for summary judgment, in essence, is whether there is a legitimate disagreement over a controlling issue that "may reasonably be resolved in favor of either party." *Id.* at 250.

In considering the matter on appeal, the Court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in her favor. *See Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, the Court does not weigh evidence or make credibility determinations. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (cleaned up). Evidentiary rulings determinative of a summary judgment are reviewed for abuse of discretion, reversing only if the ruling at issue was "arbitrary and irrational." *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011).

The district court erred in finding no material facts at issue. Instead, it weighed facts and determined credibility by relying on specific facts despite Ms. Hall's objections to those facts.

Ms. Hall requests that this Court reverse the decision for summary judgment and remand the matter to the district court to continue to trial.

## II. Ms. Hall Made a Prima Facie Case for Failure to Accommodate Her Sincerely Held Religious Beliefs

To make out a prima facie case of religious discrimination based on a failure to accommodate, the appellant must show that: (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) she informed the [employer] of the belief; and (3) she was disciplined for failure to comply with the conflicting requirement. *Dorsey v. Department of Air Force*, 78 M.S.P.R. 439, 445 (1998); *Reed*, 76 M.S.P.R. at 131. If the appellant makes that showing, the agency must prove that accommodating her beliefs would have resulted in "substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 143 S. Ct. 2279, 2295, 216 L. Ed. 2d 1041 (2023).

### a. Ms. Hall's Sincerely Held Religious Beliefs Conflict with a Work Requirement

For a belief to be religious, it is not necessary to "contemplate an orthodox or traditional God." *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988). It is sufficient that "the belief 'occupies a place in the life of its possessor

parallel to that filled by the orthodox belief in God.'" *Id.* (quoting *United States v. Seeger*, 380 U.S. 163, 166, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965)); *see Detwiler v. Mid-Columbia Med. Ctr.*, 2022 U.S. Dist. LEXIS 242626, 2022 WL 19977290, at *3 (D. Or. Dec. 20, 2022), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 92510, 2023 WL 3687406 (D. Or. May 26, 2023) (applying *Mason* in Title VII context).

It is clear that "Title VII's protections are not limited to beliefs and practices that courts perceive as 'acceptable, logical, consistent, or comprehensible to others,'" nor do EEOC guidelines on religious discrimination require a specific religious group to advocate the belief of the individual employee. *Cloutier v. Costco Wholesale*, 311 F. Supp.2d 190, 196 (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981)) (citing 29 C.F.R. § 1605.1). Even so, beliefs and practices grounded in tenets or precepts of groups or entities that are more social and political than religious do not qualify as religious within Title VII. *Bellamy v. Mason's Stores, Inc.*, 508 F.2d 505 (4th Cir. 1974). Nor does Title VII not protect personal preferences. *E.E.O.C. v. Union Independiente*, 279 F.3d 49; *Brown v. Pena*, 441 F. Supp. 1382, 1385 (D.C. Fla. 1977) (holding that a "personal religious" creed concerning Kozy Kitten Cat Food is a personal preference and not a religious belief). *Andrews v. Virginia Union University*, Civil Action No. 3:07cv447, at *14-15 (E.D. Va. May 15, 2008).

Yet, in assessing whether a belief or practice is religious, courts have "no authority to determine what is or is not a religion," and courts are not to evaluate religious truth. *Chaplin v. Du Pont Advance Fiber Sys.*, 293 F. Supp. 2d 622, 629 (E.D. Va. 2003) (citing *United States v. Lee*, 455 U.S. 252, 257 (1982)). Instead, the court's task is limited to determining whether a claimant's belief is "in her own scheme of things, religious." *Id.* (citing *United States v. Seeger*, 380 U.S. 163, 165 (1965)). *Andrews v. Virginia Union Univ.*, Civil Action No. 3:07cv447, at *15 (E.D. Va. May 15, 2008).

In response to the pandemic and the obligation to follow state and federal law regarding vaccinations for health care providers SPHS required all employees who had not received a medical or religious exemption to be vaccinated against COVID-19. As federal and state law allowed, SPHS accepted requests for medical and religious accommodations to the vaccination requirement.

Ms. Hall believes that her body is a temple that belongs to her Creator, God. Ms. Hall believes that she must protect her body from harm. Ms. Hall holds the religious belief that abortion is a sin, and that no product developed from fetal cells should be used.

Ms. Hall requested an accommodation based on her religious beliefs because those beliefs conflicted with the Defendant's requirement that employees be vaccinated against COVID-19. Following Defendant's requirements, Ms. Hall

submitted a request for religious accommodation that included a letter from one of the pastors of her church. The letter from the pastor of her church stated that Ms. Hall's religious convictions were based on scripture.

Defendant submitted a position statement during the EEOC investigation process. Defendant specifically stated that it "did not question the bona fides of [Ms. Hall's] stated religious beliefs." *JA0029.*

Therefore, it is undisputed that Ms. Hall's bona fide religious belief conflicted with an employment requirement.

### b. Ms. Hall Informed SPHS of the Conflict When She Requested a Religious Exemption to SPHS's COVID-19 Vaccination Policy

On August 31, 2021, Ms. Hall requested religious accommodation for SPHS's mandatory COVID-19 vaccination policy. In the request, she established that obtaining a COVID-19 vaccination would go against the tenets of her religion. She included a letter from a pastor from her church that confirmed Ms. Hall's membership and that Ms. Hall's religious beliefs against obtaining a COVID-19 vaccination were based on scripture.

Therefore, SPHS was notified of the conflict between Ms. Hall's religious beliefs and the vaccination requirement for COVID-19.

### c. SPHS Disciplined Ms. Hall by Terminating Her Employment Because of Her Sincerely Held Religious Beliefs and Her Failure to Receive the COVID-19 Vaccination

Ms. Hall met with SPHS on or about October 14, 2021. She was notified that if she did not become vaccinated against COVID-19, her employment with Sheppard Pratt would terminate on or about November 5, 2021.

Discipline under a failure to accommodate claim overlaps with the concept of an adverse employment action; it includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities." *See Powell v. Susdewitt Mgmt., LLC*, Civil Action No. CCB-20-2343, 2021 U.S. Dist. LEXIS 184395, at *12-13 (D. Md. Sep. 27, 2021) (quoting *Abdelkader v. Sears, Roebuck & Co.*, 780 F. Supp. 2d 389, 395 (D. Md. 2011)).

Title VII liability can arise from a "tangible employment action," which the Court defined to include not only "hiring, firing, failing to promote,. . . [and] significant change in benefits," but also "reassignment with significantly different responsibilities." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998).

The terminology used to describe the tangible employment action or adverse employment action should not be parsed too narrowly. This is not a tort claim for wrongful termination or wrongful discharge; therefore, the distinction between discharge and termination should not matter. What does matter is that SPHS

refused to allow Ms. Hall to continue her employment because she refused to go against her religious convictions and become vaccinated against COVID-19.

Thus, the third and final element Ms. Hall must prove has been met.

### III. SPHS Did Not Prove That Providing Ms. Hall a Religious Exemption to the COVID-19 Vaccination Was an Undue Burden on the Business

#### a. The Undue Hardship Standard

Title VII of the Civil Rights Act of 1964 made it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges [of] employment because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1) (1964 ed.). Title VII did not define discrimination because of religion. *Groff*, 600 U.S. at 457. In 1968, the EEOC issued regulations interpreting the standard that "obligated employers to 'make reasonable accommodations to the religious needs of employees' whenever doing that would not work an 'undue hardship on the conduct of the employer's business.'" *Id.* (quoting 29 C.F.R. § 1605.1 (1968). In 1972, Congress amended Title VII and adopted statutory language "[t]racking the regulatory language." *Id.* at 458. Since 1972, employers have been permitted to avoid liability for religious discrimination under Title VII where the employer demonstrates that it is "unable to reasonably accommodate to an employee's or prospective employee's religious

observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The Supreme Court analyzed an employer's liability for denying religious accommodation in *Hardison*. 432 U.S. at 76. The *Hardison* Court balanced the protected religious interests against the burdens the employer would bear in accommodating plaintiff. *Id. at 76-83.* The articulated conclusion was: "To require [employer] to bear more than a *de minimis* cost in order to give [employee the accommodation] is an undue hardship. *Id.* at 84. More than a *de minimis* cost emerged as the operative definition of undue hardship among many courts. *See Groff*, 600 U.S. at 454, 465. The Supreme Court in *Groff* clarified that "undue hardship" requires a showing that the asserted burden "is substantial in the overall context of an employer's business." *Id.* at 468.

SPHS is in the business of healthcare, espousing the fundamental tenet of the Hippocratic Oath of "Do No Harm." *JA0112*. The various locations and programs serve a variety of patients. *Id.* Appellant was employed as an admissions coordinator in the Eating Disorders unit. As part of her duties, Appellant would greet patients and their families in the lobby, confirm that the electronic forms were correctly filled out, answer any questions the patient or family may have, and then hand the patient off to a unit nurse. Patients were admitted one at a time with no one other than the immediate family and the patient meeting with Ms. Hall.

Nothing about Ms. Hall's position required her to be within six feet of an incoming patient. Contrary to the district court's decision, there was no **substantial or intensive in-person contact"** – everything could be, and was, conducted at a six-foot distance while wearing a mask, after sanitizing her hands. Emphasis added. *Compare JA0271 with JA0228 – JA0231, JA0210, and JA0241.* Ms. Hall was open to weekly testing, and, in fact, asked why she would not be able to test weekly when others who had medical exemptions were permitted to do so.

The district court incorrectly, with evidence to the contrary, cited that the essential functions of the Admissions Coordinator position could not be performed without substantial and intensive in-person contact. *JA0271.* The district court, incorrectly, with evidence to the contrary, determined that SPHS evaluated Ms. Hall's request for accommodations against the backdrop of the legal standard of "more than *de minimis* cost." *Id.*

> **b. SPHS Did Not Prove That Allowing Ms. Hall to Mask and Test in lieu of Receiving the COVID-19 Vaccination Would Increase the Risk of Spreading the Virus That Created an Undue Burden**

SPHS provided an affidavit of someone who had not been identified as a person with knowledge of the issues until just before the close of discovery.

In *Stroup v. The Coordinating Ctr.*, the District Court for the District of Maryland did not substitute its judgment for a healthcare provider's judgment. However, it did not accept the healthcare provider's position without supporting

evidence. Even in a pandemic, the Court determined that the possibility of violating Title VII should be explored. The healthcare provider was not given a pass because the alleged violation occurred during a pandemic. The defendant had not presented sufficient evidence about "whether her requested exemption would result in "substantial increased costs" in Defendant's business operations." *Stroup v. The Coordinating Ctr..*, Civil Action MJM-23-0094, 2023 U.S. Dist. LEXIS 173688 at *19 (D. Md. Sep. 28, 2023) (citing *Groff*, 600 U.S. at 470). The Court said that "Defendant has presented no evidence of any costs or expenditures that would result from any modification of Plaintiff's work responsibilities necessary to exempt her from vaccination while avoiding any health risks to others. Therefore, Defendant has failed to demonstrate the absence of a genuine dispute of material fact as to whether Plaintiff's requested accommodation would impose an undue hardship due to the requirements of Plaintiff's position." *Id.*

SPHS's purported analysis of religious accommodations focused on a determination that the risk posed by an unvaccinated staff member could not be mitigated, constituting an 'undue hardship' under state and federal law. Based on this statement, Sheppard Pratt had no intent of accommodating Ms. Hall's religious beliefs, which conflicted with employment requirements. Even with state and federal guidance that unvaccinated healthcare workers could be accommodated by wearing masks and taking weekly tests, Sheppard Pratt determined that there was

nothing that could be done to mitigate the risks of unvaccinated healthcare workers with sincerely held religious beliefs. *JA0030*

Moreover, Ms. Robertson-Keck said they tried to transition employees to roles that did not necessitate in-person patient interactions. But their success in this regard was limited. *JA0222 – JA0223.* Primarily, because SPHS took an all-or-nothing approach to whether a position could be performed remotely. Ms. Hall performed her job duties remotely in December 2020 while she was ill, so the only job duty that would need to be accommodated was the minimal interaction – while wearing a mask and practicing social distancing – with incoming patients. Ms. Hall did not perform any nursing actions during the patient interactions, lasting between 10 and 30 minutes. There was no discussion about how that one duty, which represented a minimal amount of time, could be accommodated so that there were added protections for incoming patients. Defendant stated that "there were no other staff nurse positions at Sheppard where the risks posed by an unvaccinated employee would have been deemed acceptable since all staff nurse jobs involve at least as much patient contact as [Ms. Hall]'s." *Id.* However, that is not the standard Title VII envisions – an employer is not required to transfer an employee to another position but make accommodations for the position the employee is in. There was no discussion of erecting Plexiglas, having the incoming patient and

family speak with Ms. Hall via Teams or Zoom, or even having someone else meet the incoming patients.

In a new argument raised in this proceeding, SPHS argues that Ms. Hall posed a risk to the coworker with whom she shared an office. However, this argument is nonsensical because, under the current COVID-19 best practices, everyone needs to maintain social distance. If there wasn't enough room in the office to appropriately social distance, then the risk of transmitting based on lack of social distancing already existed. The question remains – what changed between August 2021 and September 2021 that made Ms. Hall's unvaccinated status an undue hardship for SPHS?

## CONCLUSION

Based on the record and the law, material facts bear on whether SPHS fulfilled its obligations to Ms. Hall under Title VII by not discriminating against her and seeking, in good faith, to provide her with a proper accommodation for her sincerely held religious belief. A jury could properly conclude that maintaining the status quo, with Ms. Hall wearing a mask, social distancing, and performing weekly tests, would have been an accommodation that would cause no hardship at all. While accommodations to obviate Ms. Hall's need to meet with incoming

patients in person would come at a cost, it would not be as costly as hiring a new admissions coordinator or using staffing agencies to fulfill the role.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully suggests that the Court would benefit from hearing counsel explain certain details that may shed further light whether Ms. Hall's protections against religious discrimination were violated by SPSH. Further elucidation beyond that contained in the written briefs would benefit the Court in these proceedings. Appellant seeks reversal of the lower court's application of the facts to this case to the law in addition to legal errors committed by the lower court, and it is an understanding of the nuances in the facts of this matter that oral argument would benefit.

DATED: February 13, 2025

*/s/* Theresa Kraft, Esq.

Theresa Kraft, Esq.
Wilt Toikka Kraft, LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (603) 568-2464
tkraft@wtk-law.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE WITH

## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this Opening Brief of Appellant complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 5258 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). Furthermore, I hereby certify that this Reply Brief of Appellant complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/* Theresa Kraft, Esq.

Theresa Kraft, Esq.
Wilt Toikka Kraft, LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (603) 568-2464
tkraft@wtk-law.com

*Counsel for Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025, I electronically filed the foregoing using the CM/ECF system, which will send a notification of electronic filing to counsel of record for Appellee.

*/s/* Theresa Kraft, Esq.

Theresa Kraft, Esq.
Wilt Toikka Kraft, LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (603) 568-2464
tkraft@wtk-law.com

*Counsel for Appellant*